RICHARDSON & BOYNTON CO. *v.* RICHARDSON & MORGAN CO.

(*Supreme Court, General Term, First Department.* December 2, 1889.)

CORPORATIONS—CORPORATE NAME—INJUNCTION.

 A corporation will not be restrained from using the name of the Richardson & Morgan Company on account of confusion arising from its similarity to the name of plaintiff, the Richardson & Boynton Company, where the two companies manufacture different goods, and where there is no further evidence of confusion than that it occurred in plaintiff's correspondence, not in the corporate name, but in the address; that in one instance credits were wrongly posted; and that, according to the testimony of a single salesman of plaintiff, mistakes daily occur, during busy times, as to plaintiff's locality.

Appeal from special term, New York county.

Action by the Richardson & Boynton Company against the Richardson & Morgan Company to restrain defendant from imitating plaintiff's name. From a judgment dismissing the complaint on the merits plaintiff appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Charles H. Phelps*, for appellant.   *Birdseye, Cloyd & Bayliss*, (*Lucien Birdseye* and *James C. Cloyd*, of counsel,) for respondent.

VAN BRUNT, P. J.   The plaintiff in this action is a corporation organized in the year 1882, under the laws of the state of New York, for the manufacture of ranges, stoves, furnaces, steam-heaters, etc., and was the successor of the firm of Richardson, Boynton & Co., which firm went out of business in October, 1882.   The Raymond Furnace & Manufacturing Company was a Connecticut corporation incorporated in August, 1883, for the purpose of manufacturing, selling, and dealing, in the state of Connecticut and elsewhere, in apparatus for heating and cooking, and such other constructions of metal as might be necessary for its business and in other foundry work. This company appears to have been the successor of a previous company which had, for 14 years and upwards, been engaged in the manufacture and selling of goods known as "Fire on the Hearth" stoves, grates, and heaters. In February, 1888, the Raymond Company increased its capital from $20,000 to $75,000, and in March, on due proceedings held for that purpose, its name was duly changed to the Richardson & Morgan Company, the defendant; and thereafter the defendant conducted its business under its charter, and had an office for the transaction of its business in this city, in Beekman street, whereas the plaintiff's place of business was in Water street.   This action was commenced to restrain the use by the defendant of the name Richardson & Morgan Company, upon the ground that it was a deliberate imitation of the corporate name of the plaintiff, and that confusion, loss, and injury resulted to the plaintiff from the similarity of the corporate names of the plaintiff and defendant, and that the alleged imitation was calculated to and did deceive and impose upon the public, and upon the purchasers of the plaintiff's goods. Upon the trial the complaint was dismissed, and from the judgment thereupon entered this appeal is taken.

In cases of this description each contains features peculiar to itself, and the right to relief depends rather on questions of fact than on questions of law. The rule which governs adjudications in respect to questions such as that presented by the case at bar is reasonably plain, and it is distinctly held that such a similarity of names as is likely to produce confusion in the minds of ordinary unsuspecting persons will be restrained.   Therefore the question involved in this case is, was there such a similarity of names?   We might indulge in speculation in reference to the likelihood of confusion arising from similarity of these names in the conduct of business, and that such similarity was calculated to deceive and impose upon the public, and upon the purchasers of goods of the character in which the parties to this action were accustomed to deal.   But the most satisfactory evidence in reference to the results likely to follow from alleged similarity is evidence of actual cases in which such deception and imposition has occurred.   In the case at bar attempts have been made to show that confusion has arisen from the alleged similarity of names; but it is singularly barren of evidence showing that a single customer has been lost to the plaintiff by reason thereof, or any satisfactory evidence that a single person has been deceived into calling in the one store when he intended to visit the other.   It is true that one of the plaintiff's witnesses testifies that he was a salesman for the plaintiff for five years, and that his duties were at the store, and, when asked if he had occasion to know of any confusion arising from the similarity of names of the plaintiff and the defendant among the public or customers coming into their place, he answered that in busy times it was almost an every-day occurrence.   On being asked to state how, he replied: "People come in here and say that they have been in the store in Beekman street, and thought it was our place,—

thought we had moved." It is a singular feature of the evidence of this witness that, although beyond question the plaintiff has been treasuring up every bit of evidence which would tend to show the confusion which had arisen from this similarity of name, yet, notwithstanding this daily occurrence, they have not produced a single customer, or the name of a single customer, who has made any such mistake. A consideration of the evidence of this witness is one of the strongest indications that such things could not have occurred, and consequently testimony as to the fact could not be produced. It is true there was some evidence of confusion in respect to correspondence, and that in one instance credits were wrongly posted. But it will be observed that the confusion was not in the corporate name of the party to whom the correspondence was addressed, but seems to have arisen from a confusion in the locality; correspondence addressed to the Richardson & Morgan Company, and addressed to them, reaching the hands of the Richardson & Boynton Company, and *vice versa*. But there is no instance in which a customer or correspondent of either of these companies has addressed the other, confusing the names. Confusion of addresses will not support a claim that confusion has arisen from similarity of name. Their customers seem to have kept the names distinct, although they may have made mistakes in regard to the location of their place of business.

Upon an examination of the whole of the testimony in this case, we think it singularly barren of instances where confusion has arisen or mistakes have occurred; and applying this test to the question as to whether the names are sufficiently similar to lead to confusion in the public mind, and in the minds of customers of these two corporations, there seems to be no adequate proof to sustain the affirmative of this proposition. It appears from the evidence that the goods manufactured by the defendant are totally different and distinct from those manufactured by the plaintiff. It is true that it is claimed that in one of the circulars issued by the defendant the same colored ink is used in the illustrations as was used in the illustrations in the plaintiff's circulars. But it is not this act of imitation which it is sought to restrain by this action. It is sought to restrain the use of defendant's corporate name upon the ground that it is likely to impose upon an ordinary unsuspecting person. In view of this barren condition of the evidence, which to our minds rather establishes the proposition that there is no such similarity of names as is likely to cause confusion, we do not think that the extraordinary remedy of enjoining the defendants from the use of this name, to which otherwise they have a right, should be successfully invoked. There is no doubt but that this court could, and in proper cases would, restrain the defendant from the use of a corporate name liable to produce confusion, even although it belonged to a foreign corporation; because comity does not require that we should allow a foreign corporation to do that which we would not allow domestic corporations to do.

There were various exceptions taken to the admissibility of evidence. These exceptions we have examined, and the evidence does not seem to have been of a character, even if admitted, which could in any way change the result arrived at by the learned judge in the court below. Some question has been made in regard to the form of the findings signed by the learned justice, and it may be true that they are open to criticism as to the manner in which they are drawn, and that the conclusions of law arrived at and the judgment should be based upon all the material facts found, and that they must be considered by the court in the determination of the issues involved between the parties. But it does not appear that, in view of the peculiar form of the findings, the plaintiffs have sustained any damage thereby, or that any different result would otherwise have been arrived at. We think upon the whole case, therefore, that there is no evidence in this case showing that there was such

a similarity of names as was likely to produce confusion in the minds of those who were dealing with these corporations, and consequently that the plaintiff has sustained no injury or damage. The judgment should therefore be affirmed, with costs. All concur.