(174 App. Div. 15)

ROSE v. BRISTOL.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. PLEADING ⬅═8(7)—CONCLUSIONS OF LAW—REPUDIATION OF CONTRACT.

An allegation in an action for breach of contract that defendant repudiated the contract is merely a conclusion, and its denial raises no triable issue.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 18; Dec. Dig. ⬅═8(7).]

2. INSURANCE ⬅═85—AGENTS—EMPLOYMENT—ACTION FOR BREACH—ISSUES—DENIAL OF IMMATERIAL MATTERS.

In an action for breach of contract of employment as insurance agent, allegations that plaintiff complied with all the rules and regulations of the insurance company and the laws of the state of New York prior to the revocation of his license are not put in issue by a denial, where there is no claim that plaintiff was discharged for any violation of such rules or laws.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ⬅═85.]

3. INSURANCE ⬅═85—AGENTS—EMPLOYMENT CONTRACT—ACTION FOR BREACH—ISSUES.

In an action for breach of a contract of employment as insurance agent, the allegations of the reply denying that the contract was entered into

subject to the Insurance Law of the state, raised no issue, since it must be assumed that the parties contracted with reference to the Insurance Law as it stood at the time the contract was made.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

4. CONTRACTS ☞167—CONSTRUCTION—PROVISIONS OF LAW.

A contract is presumed to have been made with reference to all existing laws relating thereto or to the subject-matter thereof, and those laws enter into the contract and define and determine it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 750; Dec. Dig. ☞167.]

5. INSURANCE ☞85 — AGENTS — EMPLOYMENT — BREACH — CANCELLATION OF PLAINTIFF'S LICENSE.

That defendant maliciously caused plaintiff's agency license to be canceled, thus making performance of the contract impossible, did not constitute a breach of the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

6. INSURANCE ☞85—AGENTS—BREACH OF CONTRACT—IMPOSSIBILITY OF PERFORMANCE BY ALL DEFENDANTS.

Where an insurance agent's license was canceled by the state insurance commissioner and performance of an agency contract was thus rendered impossible, such agent could not maintain an action for breach of contract; performance thereof being forbidden by Penal Law (Consol. Laws, c. 40) § 1192, after revocation of plaintiff's license.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 115; Dec. Dig. ☞85.]

Appeal from Special Term, New York County.

Action by Bernard R. Rose against John I. Bristol. From an order denying a motion for judgment on the pleadings, defendant appeals. Reversed, and motion granted.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

James C. Foley, of New York City, for appellant.
Harold H. Bowman, of New York City, for respondent.

DAVIS, J. The court at Special Term denied defendant's motion for judgment on the pleadings. The pleadings consist of a complaint, answer, and reply. The action is brought to recover $200,000 damages for a breach of contract of employment.

On or about January 11, 1907, the plaintiff, then being duly licensed by the superintendent of insurance of the state of New York to solicit insurance as an agent of the Northwestern Mutual Life Insurance Company, entered into a written agreement with the defendant, as general agent of the insurance company, whereby defendant employed the plaintiff to work for him as subagent for a term beginning January 11, 1907, and ending December 31, 1916, and agreed to pay him for the services rendered certain commissions and renewal commissions. The plaintiff continued to work for defendant until about the 7th day of July, 1914. On or about this latter date the plaintiff's license was revoked by the superintendent of insurance, after which, it is conceded, the plaintiff could not lawfully solicit business as an

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

agent, or otherwise carry out the terms of the agreement with defendant, nor could the defendant lawfully receive applications from the plaintiff, or otherwise carry out his part of the contract. On January 11, 1907, the date of the contract, the Insurance Law of this state forbade the plaintiff to solicit or accept applications for insurance without first procuring from the superintendent of insurance a certificate of authority or license, and by subsequent amendments life insurance companies and their agents were forbidden to pay any form of compensation to any person for services in obtaining new insurance, unless such person shall have first procured a certificate of authority from the superintendent of insurance. Thus both plaintiff and defendant concede that the law of the state has made the contract impossible of fulfillment.

The plaintiff, however, contends that, although the law has made it impossible to carry out the terms of the contract, nevertheless the defendant is liable on his absolute undertaking that the plaintiff should remain defendant's agent during the term of the contract, unless his agency was terminated by the company for one of the causes mentioned in the contract. The revocation of plaintiff's license is not one of those specified causes. On the other hand, the defendant claims that the contract was entered into with reference to the existing law of the state, and the law having forbidden the plaintiff to solicit insurance without a license, and likewise the defendant to accept applications from or to pay commissions to a person not licensed as an agent, and having made it a criminal offense under Penal Law, § 1192, for either party to carry out the contract, he was not liable as for a breach thereof.

The complaint contains 13 paragraphs. The defendant admits the allegations contained in the first, second, fourth, fifth, sixth and seventh. He also admits all of the allegations of paragraph third, except the allegation that plaintiff's license continued in force until revoked at the instance of the insurance company on or about July 6, 1914. This allegation is denied in the answer; but this denial raises no issue, because the law requires the license to be issued yearly, and, indeed, the plaintiff so alleges in the fourth paragraph of his reply.

[1] The defendant also admits all of the allegations of paragraph eighth of the complaint, except the allegation that he repudiated the contract. This latter allegation is merely a conclusion, and its denial raises no issue to be tried. In fact, it appears from the reply that the "repudiation" referred to was the refusal of the defendant to accept applications from the plaintiff because of the revocation of plaintiff's license by the superintendent of insurance.

[2] The defendant also admits all of the allegations of the ninth paragraph of the complaint, except the allegations that plaintiff complied with all of the rules and regulations of the company and the laws of the state down to July 7, 1914 (the date of the revocation of his license), and that plaintiff's income from his business was an increasing income. These latter allegations are denied; but this denial raises no issue, as there is no claim that plaintiff was discharged for any violation of the rules of the company or of the laws of the state. If

the truth of these allegations had been admitted or proved, in the view we take of the reason why defendant refused to go on with the contract, it would not help the plaintiff, as these allegations are wholly immaterial.

And the same may be said of the denials of paragraphs tenth and eleventh. In these paragraphs the plaintiff alleges that the contract was entered into subject to and governed by a well-known and invariably recognized custom by virtue of which agents who had served acceptably were entitled to a renewal of their contracts at their expiration, so that plaintiff would be entitled to a renewal of his contract at its expiration. These allegations are immaterial, and the denial of them creates no issue, unless the defendant is held to be liable under the terms of his contract, notwithstanding both parties were forbidden by law to perform it.

Defendant also denies the allegations of the twelfth paragraph. This paragraph is as follows:

"Twelfth. That on or about the 7th day of July, 1914, while said agreement, 'Exhibit A,' as modified, was in full force and effect, defendant broke his said contract with plaintiff, and, without right or cause, discharged plaintiff from his said employment, and thereafter refused to accept any further applications for insurance in said the Northwestern Mutual Life Insurance Company from plaintiff, or to be in any respect bound by any of the terms of his said agreement with plaintiff, 'Exhibit A,' as so modified, by defendant to be kept and performed. That by reason thereof plaintiff has been deprived of the benefit of his said contract with defendant, as modified, and of the right to the renewal thereof, and of the means of earning his living thereunder, to his damage in the sum of two hundred thousand dollars ($200,000)."

The sense in which the word "discharged" is used in this allegation is shown by the seventh paragraph of the reply, where the plaintiff states that the cause of his ceasing to be a subagent of the defendant was the revocation of his license, maliciously brought about by the insurance company. This denial, therefore, raises no issue to be tried.

If we examine now the affirmative defense and the reply, a similar absence of material issues will appear. This defense is contained within paragraphs IX and X of the answer, and is substantially as follows: That the contract in question was entered into by the plaintiff and the defendant, subject to and limited as to its continuance by the provisions of the Insurance Law of the State of New York (Consol. Laws, 'c. 28), which provided, among other things, that no person should solicit or obtain applications for life insurance in any life insurance company unless he was at the time of such solicitation and of obtaining such applications a duly licensed agent of such company under a license issued by the superintendent of insurance of the state of New York; and the said law further prohibited all life insurance companies and all agents of such companies from receiving applications for life insurance and from paying any commissions or other compensation for such applications to persons who were not at the time duly licensed agents of the company for and in behalf of which such applications had been obtained. That on the 7th day of July, 1914, the plaintiff was not a duly licensed agent of the Northwestern Mutual Life Insurance Company, and did not on said date or at any

time thereafter hold a license from the superintendent of insurance of the state of New York authorizing him as agent to solicit applications for life insurance in said company, and that he could not, on and after the said 7th day of July, 1914, lawfully solicit or obtain applications for life insurance in the said company, and that the defendant could not upon the said 7th day of July, 1914, nor at any time thereafter, lawfully receive from the plaintiff any such applications for life insurance in the said life insurance company. That on the said 7th day of July, 1914, and at all times thereafter, the plaintiff herein was prohibited by section 1192 of the Penal Law of the state of New York from soliciting or procuring applications for life insurance in the said the Northwestern Mutual Life Insurance Company, unless he held a license, and that by reason of the force and effect of the said statutes, and by reason of the cancellation of the plaintiff's license, which was effected without any act or procurement and without prior knowledge or privity of this defendant, the contract had been made impossible of performance without any act or fault of this defendant.

[3, 4] The first paragraph of the reply simply denies the allegation in paragraph IV of the answer that the contract was entered into subject to the Insurance Law of the state, and the second paragraph makes denial of the same allegation contained in paragraph X of the answer. These denials raise no issue to be tried. It must be assumed here that the parties contracted with reference to the Insurance Law as it stood at the time the contract was made. Labaree v. Crossman, 100 App. Div. 499, 503, 92 N. Y. Supp. 565, affirmed without opinion 184 N. Y. 586, 77 N. E. 1189. As was said by Justice Page in the case of Ward v. Union Trust Co., recently decided by this court and reported in 159 N. Y. Supp. 54, 56:

"When parties enter into a contract, they are presumed to have in mind all the existing laws relating thereto or to the subject-matter thereof. Those laws enter into the contract and define and determine it."

In paragraph III of the reply the plaintiff also denies the last paragraph of X of the answer, which is as follows:

"That by reason of the force and effect of the said statutes, and by reason of the cancellation of the plaintiff's license, which was effected without any act or procurement or without prior knowledge or privity of this defendant, the said contract, Exhibit A, has been made impossible of performance without any act or fault of this defendant."

[5] Nevertheless the reply sets up the very statute which made performance of the contract impossible, and it nowhere alleges that the cancellation of plaintiff's license was procured by the defendant or through his instrumentality. On the contrary, responsibility for the revocation of the license is placed by the plaintiff upon the insurance company itself. For instance, in paragraph seventh of the reply we find the allegation that the insurance company maliciously caused plaintiff's license to be revoked, and thus made it impossible for plaintiff and defendant alike to carry out the contract. And furthermore, in view of this latter allegation, it is quite apparent that defendant's denial of the allegation of the complaint that defendant unlawfully

broke his contract and discharged the plaintiff is not a denial which raises any issue of fact, for upon these pleadings it clearly appears, not that the contract was broken and the plaintiff discharged by defendant, but that the law forbade its performance. Moreover, even if the defendant had improperly caused the cancellation of plaintiff's license, it is doubtful if that act would have constituted a breach of the contract. Such conduct on defendant's part might render him liable for damages in some other cause of action, but not in the one at bar.

The reply further alleges that the insurance company maliciously caused plaintiff's license to be canceled, and thus made the contract impossible of performance by both parties, because of plaintiff's well-known criticism of the company's methods, and with a desire of the company to be revenged upon plaintiff, and that defendant fully co-operated with plaintiff in making these criticisms, and that, had it not been for the aid thus given by defendant, plaintiff's inability to perform the contract would not have arisen. Assuming the truth of these allegations, it is quite obvious that they constitute no breach of the contract in question.

The reply also sets forth the Insurance Law of the state requiring the possession of a license as a prerequisite of doing business as agent, defendant's knowledge of this law at the time of the execution of the contract, the fact that the contract specified the conditions under which the contract could be canceled, the fact that the contract contained no provision releasing the defendant from the obligation to perform in case plaintiff's license should be revoked at the instance of the company, and the fact that the contract was not terminated for any cause enumerated therein, or for any misconduct of the plaintiff, but because of the malicious act of the insurance company.

[6] Under these allegations it is sought to hold the defendant upon the theory that he warranted and agreed that the company would retain plaintiff as its agent for ten years, except under the conditions specified in the contract, although the act of the company in causing the cancellation of plaintiff's license was in no way attributable to the plaintiff. This contention, we believe, is unsound in law under the circumstances of this case. There is no provision in the contract indicating in the least degree that the defendant undertook, expressly or impliedly, either to procure a license for the plaintiff, or to secure its continuation or renewal, or to secure the continued approval of the plaintiff's agency by the company. It is true, also, that the contract contains no provision that it was to terminate when performance was rendered impossible by the revocation of plaintiff's license under the law. But such a provision is not necessary to relieve the defendant, where, as here, the contract is executory and for personal services. As was said in the case of Labaree v. Crossman, supra:

"Stipulations in the contract against such contingencies are not essential to the relief of the party when performance is rendered impossible."

These pleadings show that the case at bar is one in which performance became impossible to both parties under the law, and not through any act or default of the defendant. It is like the case of People v. Globe Mutual Life Ins. Co., 91 N. Y. 175, where the appointment of a

receiver made the agent's contract impossible of performance, and where the court say at page 179:

"The state, by the injunction order operating alike upon the company and its agents, paralyzed the action of both the contracting parties, so that neither could perform [by putting] the other in the wrong. Thereupon the company could not refuse, and did not refuse. To put it in the wrong, and make it liable for a breach, required action on the part of Mix. As a condition precedent he was bound to show both ability and readiness to perform on his part. Shaw v. Republic Life Ins. Co., 69 N. Y. 292; James v. Burchell, 82 N. Y. 113. He could do neither. Performance by him had become illegal. It would have been a criminal contempt, and possibly a misdemeanor. There could be neither readiness nor ability to do the forbidden and unlawful acts."

And further on the court say:

"What had happened was a dissolution of the contract by the sovereign power of the state, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement."

From this consideration of the pleadings in this case we have reached the conclusion that they present no issues of fact, the determination of which in favor of the plaintiff would entitle him to a judgment against the defendant.

The order denying defendant's motion for judgment on the pleadings is reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. Order filed. All concur.